IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARVIN GLENN HOLLIS,

Plaintiff, No. 2:08-cv-2810 KJN P

vs.

ROBIN DEZEMBER, et al., ORDER AND

Defendants. FINDINGS AND RECOMMENDATIONS

_____________________________/

I. Introduction

Plaintiff is a state prisoner proceeding without counsel and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983. On March 17, 2010, defendants filed a motion to dismiss on the grounds that plaintiff failed to exhaust his administrative remedies prior to filing the instant action, and that plaintiff failed to state a cognizable civil rights claim against defendant Audette. After receiving extensions of time, plaintiff filed an opposition on July 2, 2010. Defendants filed a reply on July 15, 2010.[1]

[1] On July 23, 2010, plaintiff filed an objection and opposition to defendants' reply. On July 30, 2010, defendants filed a motion to strike plaintiff's July 23, 2010 pleading, as neither the Federal Rules of Civil Procedure or the Eastern District Local Rules provide for the filing of a surreply. Indeed, Local Rule 230 provides for the filing of a motion, an opposition, and a reply. Defendants' motion to strike will be granted and plaintiff's July 23, 2010 filing will be stricken.

II. Motion to Dismiss for Failure to Exhaust

Background

Plaintiff is proceeding on his amended complaint filed January 9, 2009, against defendants Audette, Koller, Plainer, Ingrewson, Speers, Wrigley, Flaherty, Prater, Shaver, Koenig, Pena, Medina, Zollo, Clark, Cheney, Nason, Waterman, Swingle, Acquaviva and Dezember (collectively "defendants"). Plaintiff raises myriad claims allegedly exhausted through several separate administrative appeals, addressed more specifically below. Plaintiff seeks declaratory and injunctive relief, monetary and punitive damages. (Dkt. No. 11 at 8-9.)

Legal Standard

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002). Exhaustion is a prerequisite for all prisoner suits regarding conditions of confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532.

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy and effective." Id. at 524; Booth v. Churner, 532 U.S. 731, 740 n.5 (2001). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Booth, 532 U.S. at 741. A prisoner "seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." Id. at 734. The fact that the administrative procedure cannot result in the particular form of relief requested by the prisoner does not excuse exhaustion because some sort of relief or responsive action may result from the grievance. See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes

of exhaustion requirement include allowing prison to take responsive action, filtering out frivolous cases, and creating administrative records).

A prisoner need not exhaust further levels of review once he has either received all the remedies that are "available" at an intermediate level of review, or has been reliably informed by an administrator that no more remedies are available. Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). Because there can be no absence of exhaustion unless some relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the relief already granted as a result of that process. Brown, 422 F.3d at 936-37.

As noted above, the PLRA requires proper exhaustion of administrative remedies. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Thus, compliance with prison grievance procedures is required by the PLRA to properly exhaust. Id. The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Id. at 83-84.

The State of California provides its prisoners the right to appeal administratively "any departmental decision, action, condition or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). It also provides them the right to file appeals alleging misconduct by correctional officers and officials. Id. at § 3084.1(e). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections and Rehabilitation. Barry v. Ratelle, 985 F.Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal.Code Regs. tit. 15, § 3084.5). A final decision from the Director's level of review satisfies the

exhaustion requirement under § 1997e(a).  Id. at 1237-38.

Non-exhaustion under § 1997e(a) is an affirmative defense which should be brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b).  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Moreover, the court may look beyond the pleadings to determine whether a plaintiff exhausted his administrative remedies.  Id. at 1119-20.

Analysis

a. HDSP-07-03973

Defendants concede that plaintiff exhausted grievance HDSP-07-03973 through the third level on June 30, 2008, prior to filing the instant amended complaint.  (Dkt. No. 60 at 11.)  This grievance serves to exhaust plaintiff's claims concerning his treatment on November 9, 2007, during an interview at the unit office with mental health staff, as well as his subsequent placement in a holding cell in triangle restraints, where he was allegedly denied drinking water, access to the bathroom, and orthopedic boots, for several hours.  (Dkt. No. 11 at 8-15.)  Plaintiff named defendants Koller, Plainer, Ingrewson and Audette in connection with this claim.  These defendants will be directed to file a responsive pleading to the amended complaint.

However, there are no charging allegations as to defendants Speers, Wrigley, Flaherty, Prater, Shaver, Koenig, Pena, Medina, Zollo, Clark, Cheney, Nason, Waterman, Swingle, Acquaviva and Dezember with regard to plaintiff's claims exhausted by grievance HDSP-07-03973.  These defendants will not be required to file a responsive pleading to the claims exhausted by grievance HDSP-07-03973.

b. HDSP-C-08-1853

In grievance HDSP-C-08-1853, plaintiff alleged he did not have a pillow or a new mattress despite having a medical chrono allegedly requiring him to have a pillow and a new mattress.  (Dkt. No. 77-2 at 46.)  Plaintiff complained that his mattress was "flat and old," and that he had "discomfort while lying on the flat mattress."  (Id.)  Plaintiff does not mention an

unsanitary nature of the mattress or claim that it caused him to contract methicillin-resistant staphylococcus aureus infection ("MRSA"). (Id.) Therefore, grievance HDSP-C-08-1853 cannot serve to exhaust plaintiff's claim concerning an unsanitary mattress or the resulting MRSA infection.

However, grievance HDSP-C-08-1853 may serve to exhaust plaintiff's instant claim that defendants Prater, Shaver, and Koenig allegedly intentionally interfered with plaintiff's prescribed medical treatment by denying plaintiff his prescribed pillow and mattress from June 2008, through August 11, 2008. (Am. Compl. at 18.) Plaintiff filed grievance HDSP-C-08-1853 on June 1, 2008. (Dkt. No. 77-2 at 46.) On July 18, 2008, the first level appeal response partially granted plaintiff's appeal. (Dkt. No. 77-2 at 45.) Plaintiff was advised that "when new mattresses and pillows are obtained from the Warehouse, [he] [would] be issued a pillow and . . .allowed to exchange [his] current mattress with a new one, if [his] mattress [was] deemed unserviceable." (Id.)

On July 22, 2008, plaintiff requested a second level review, stating he had not yet been provided a pillow, nor allowed to exchange his mattress. (Dkt. No. 77-2 at 47.) Plaintiff received a second level appeal response granting the appeal on August 4, 2008. (Dkt. No. 77-2 at 43.) Plaintiff was informed that he would need to see a health care provider at High Desert State Prison ("HDSP") to determine whether his medical condition required a chrono for a new mattress and a pillow, and LVN Slaubaugh would refer plaintiff to a health care provider. (Dkt. No. 77-2 at 44.) The second level appeal response noted plaintiff had been recently moved and had received a different mattress that plaintiff indicated was acceptable. (Id.) After checking with warehouse personnel, Lt. Koenig instructed Facility C staff to order pillows and informed plaintiff he would be issued a pillow when the supply order was delivered. (Id.)

Plaintiff contends he was not obligated to seek relief at the third level because his second level appeal was granted. (Dkt. No. 77 at 10.) Defendants argue that prison officials informed plaintiff that if he was dissatisfied, he could appeal the determination. (Dkt. No. 81 at

4.) Therefore, defendants contend further relief may have been available at the third level of review. (Id.)

Plaintiff also argues he sought third level review, but never received a third level response. (Dkt. No. 77 at 10.) Plaintiff states the third level sent him a "notification" that "because the appeal was granted that there was nothing further to review and provided plaintiff a bar code number to his appeal #0803249 verifying the action," citing to pages 55-56 of the amended complaint. (Dkt. No. 77 at 10-11.) Review of pages 55-56, however, reveals no such "notification," but does bear a received stamp of August 13, 2008, from the Inmate Appeals Branch with "Granted SE" beside it (Dkt. No. 11 at 55), as well as a bar code in the Director's Review section (Dkt. No. 11 at 56). Defendants have provided no evidence to rebut plaintiff's filing at the third level, and it appears the Inmate Appeals Branch opted not to provide a formal, third level response. Therefore, defendants have not met their burden to show plaintiff failed to exhaust his remedies with regard to his claim that defendants intentionally deprived him of a pillow and mattress as allegedly required by his medical chrono. Defendants Prater, Shaver, and Koenig will be required to file a responsive pleading to this claim.

c. HDSP 07-04057

Defendants have provided the July 3, 2008 Director's Level Appeal Decision for plaintiff's grievance No. HDSP 07-04057. (Dkt. No. 60-1 at 27.) The appeal reflects plaintiff complained that the mattresses in the Administrative Segregation Unit ("ASU") were not in legal compliance with the State fire hazard laws and are worn-out and in overall poor condition. Plaintiff asked that the mattresses be exchanged for mattresses that are in compliance with fire hazard laws. (Dkt. No. 60-1 at 27.)

In the instant action, plaintiff contends defendants Plainer, Waterman, Ingrewson, Speers and Does forced him to sleep on a foul, altered mattress that was unsanitary and caused him to contract a MRSA infection. (Am. Compl. at 16-17.) Plaintiff contends that because his initial grievance stated the mattresses were "worn out in very poor conditions with bloodborne

pathogens, semen stains, blood stains, pepper spray residue, and other unknown hazards such as dust mites," (Dkt. No. 77-2 at 40, 42), this was sufficient to put defendants on notice of his claim in this action.

However, review of the grievances demonstrate plaintiff raised a group complaint about mattresses in the ASU generally, with a focus on the allegation that the mattresses did not comply with fire hazard laws as well as their overall poor condition.[2] In these grievances, plaintiff does not specifically contend that his own mattress was unsanitary or gave him MRSA; rather, he claimed the "mattresses also cause[d] this group and class to suffer increase[d] pain and discomfort." (Dkt. No. 77-2 at 42.) Grievance HDSP 07-04057 is insufficient to put defendants on notice of plaintiff's claim that his particular mattress was unsanitary and caused him to contract MRSA. Therefore, this claim must be dismissed as it is unexhausted.

d. HDP-31-08-15364

Petitioner concedes he received the second level response to grievance HDP-31-08-15364 a few days after he filed the instant action. (Dkt. No. 77 at 13.) Although plaintiff claims the second level response was untimely, defendants have provided evidence demonstrating the response was timely. (Dkt. No. 81 at 3.) In any event, plaintiff did not receive a third level response to this grievance until August 19, 2009 (Dkt. No. 77, Ex. E), which was eight months after the filing of his amended complaint. Therefore, plaintiff's claims contained in HDP 08-31-08-15364 were not exhausted prior to filing the amended complaint and should be dismissed.

e. HDSP-S-08-01175

Plaintiff also argues that the third level response to grievance HDSP-S-08-1175 was untimely, and therefore the court should deem it exhausted. However, defendants have

[2] Plaintiff did not include his group complaint about mattresses in the instant amended complaint.

provided evidence demonstrating that the response was timely[3] (dkt. no. 81 at 3), which plaintiff has failed to rebut. Plaintiff again failed to exhaust this grievance to the third level prior to filing the January 9, 2009 amended complaint, as the third level response in HDSP-S-08-1175 was not issued until October 13, 2009. (Dkt. No. 81 at 4.) Therefore, plaintiff's claims contained in HDSP-S-08-1175 were not exhausted prior to filing the amended complaint and should be dismissed.

f. Rejected or Screened Out Grievances

In his opposition, plaintiff alleges numerous grievances, including medical, were

---

[3] Title 15 of the California Code of Regulations, § 3084.6, governs the deadlines for responding to grievances:

> (b) Departmental response. Appeals shall be responded to and returned to the appellant by staff within the following time limits:
>
> > (1) Informal level responses shall be completed within ten working days.
> >
> > (2) First level responses shall be completed within 30 working days.
> >
> > (3) Second level responses shall be completed within 20 working days, or 30 working days if first level is waived pursuant to section 3084.5 (a)(3).
> >
> > (4) Third level responses shall be completed within 60 working days.
> >
> > (5) Exception is authorized in the event of:
> >
> > (A) Unavailability of the appellant, or staff or inmate witnesses.
> >
> > (B) Complexity of the decision, action, or policy.
> >
> > (C) Necessary involvement of other agencies or jurisdictions.
> >
> > (6) Except for the third formal level, if an exceptional delay prevents completion of the review within specified time limits, the appellant shall be informed in writing of the reasons for the delay and the estimated completion date.

Cal. Code Regs., tit. 15 § 3084.6(b).

rejected multiple times, citing pages 38-50 of the amended complaint. (Dkt. No. 77 at 12.) Defendants have provided evidence that only ten appeals were accepted by the Inmate Appeals Branch for a third level decision; only four are possibly related to claims raised herein: HDSP-07-04057; HDSP-07-03793; HDSP-08-03251; and HDSP-09-0060. (Dkt. No. 60-1 at 3.) Of those, only HDSP-07-04057 and HDSP-07-03793 were exhausted prior to the January 9, 2009 amended complaint. (Id.) Defendants have also provided evidence that every medical appeal filed by plaintiff and accepted by the OTLAHC for review did not receive a third level decision until after January 9, 2009. (Dkt. No. 60 at 11.) Therefore, defendants have met their burden in demonstrating plaintiff has failed to exhaust his administrative remedies with regard to the remaining claims in the amended complaint. Unless plaintiff can rebut this evidence, these remaining claims should also be dismissed.

On November 12, 2008, plaintiff received notice that his initial appeal, tracking number IA-51-2008-12201, had been incorrectly sent to the third level appeals—health care division. (Dkt. No. 11 at 39.) Plaintiff was informed that his appeal had to be "resolved at the institution at the informal and formal levels before being reviewed by OTLA-HC." (Id.) On October 22, 2008, plaintiff's grievance, tracking no. IA-31-2008-16394, was returned because it was duplicative of two appeals already in process: nos. 15667 and 16087. (Dkt. No. 11 at 48; 50.) On December 22, 2008, plaintiff's grievance, tracking no. IA-51-2008-13191 was returned because the appeal duplicated an appeal that had been rejected or was pending. (Dkt. No. 77 at 31.)

Plaintiff declares that his grievances were not duplicative and that his effort to file a grievance at the informal level was rejected or incorrectly screened out. However, defendants have provided evidence supporting the screening out of grievances HDSP-07-03892, HDSP-08-1853, HDSP-09-0035 and HDSP-08-03320. (Dkt. No. 60-1 at 5.) Defendants have also provided a chart of plaintiff's grievances regarding medical claims which are "strikingly similar to the claims alleged" herein, and all of which received third level responses after the filing of the

January 9, 2009 amended complaint. (Dkt. No. 60-2 at 2-4; Dkt. No. 60-7 at 2-4.)

Plaintiff has not provided evidence demonstrating the grievances were not duplicative or that his grievance submitted to the informal level was incorrectly screened out. Indeed, review of plaintiff's grievances reveals he often repeats the same allegations in multiple grievances. None of these grievances with tracking numbers demonstrate plaintiff could have exhausted the remaining claims contained in his amended complaint through the third level of review. See Sapp v. Kimbrell, 2010 WL 3733581 (9th Cir. 2010). Plaintiff's grievance, tracking no. IA-51-2008-12201, would not have exhausted his claims because he started at the third level rather than at the informal level. Plaintiff is required to present his complaint at the first level of the administrative process. See Cal. Code Regs. tit. 15 § 3084.5. The PLRA requires *proper* exhaustion of administrative remedies. Woodford, 548 U.S. at 83-84 [emphasis added]. This includes not only an adherence to "an agency's deadlines," but also "other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Therefore, compliance with prison grievance procedures is required by the PLRA to properly exhaust. Id. Plaintiff has also failed to demonstrate that prison officials "screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." Sapp, at *7.

Plaintiff has failed to rebut defendants' evidence that his grievances were appropriately screened out. Accordingly, defendants are not required to respond to the remaining claims contained in plaintiff's amended complaint as they are unexhausted, and defendants Speers, Wrigley, Flaherty, Pena, Medina, Zollo, Clark, Cheney, Nason, Waterman, Swingle, Acquaviva and Dezember should also be dismissed from this action.

g. Equitable Exception to Exhaustion

This court has considered whether plaintiff presents special circumstances that might entitle him to an equitable exception to the exhaustion process, but finds that plaintiff would not qualify. See Sapp at **10-11. Plaintiff has filed 101 nonmedical appeals and 37

separate medical appeals while incarcerated at HDSP. (Dkt. No. 60 at 10-11.) It appears plaintiff grew impatient with the "lengthy" exhaustion process. (Dkt. No. 11 at 26.) The exhaustion process in California is straightforward, and inmates are provided guidance along the way. Plaintiff has successfully appealed grievances through the third level of review, and it is unreasonable for plaintiff to believe he should be exempt from exhaustion because it is a "lengthy" process. This court declines to excuse plaintiff from the exhaustion requirement.

III. Motion to Dismiss Defendant Audette

Defendants seek dismissal of defendant Audette because they contend plaintiff failed to allege any wrongdoing by defendant Audette. (Dkt. No. 60 at 14.) In response, plaintiff contends that while he was held in the holding cage, defendant Audette "would tease and taunt me and refused to take any measures to provide [me] personal safety." (Dkt. No. 77-2 at 85.)

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007). However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " Erickson, 551 U.S. 89 (citations omitted).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Palmer v.

Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

It appears plaintiff contends defendant Audette was aware of the alleged constitutional violations alleged yet failed to take steps to protect plaintiff. (Dkt. No. 11 at ¶ 23; 24-25.)  Liberally construed, this is sufficient to state a potential cognizable civil rights claim. Therefore, defendants' motion to dismiss defendant Audette at this time will be denied and defendant Audette will be directed to file a responsive pleading.

IV.  Consent

Plaintiff filed a consent to the jurisdiction of a United States Magistrate Judge on December 8, 2008.  Defendants have not filed a consent form.  Accordingly, the Clerk of Court will be directed to assign a district judge to this action.

V.  Conclusion

In light of the above, this action shall proceed solely as to those claims exhausted through grievances HDSP-07-03973 and HDSP-C-08-1853: (1) plaintiff's claims that defendants Koller, Plainer, Ingrewson and Audette violated his Eighth Amendment rights during his treatment on November 9, 2007, as described above; and (2) plaintiff's claim that defendants Prater, Shaver and Koenig intentionally interfered with his prescribed medical treatment by denying his prescribed pillow and mattress from June 2008, through August 11, 2008.  The remaining claims in the amended complaint are unexhausted and should be dismissed. Defendants' motion to dismiss defendant Audette should be denied.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendants' July 30, 2010 motion to strike (dkt. no. 84) is granted; plaintiff's

July 23, 2010 filing (dkt. no. 83) is stricken.

2. The Clerk of the Court is directed to assign a district judge to this case.

IT IS HEREBY RECOMMENDED that:

1. Defendants' March 17, 2010 motion to dismiss (Dkt. No. 60) be granted in part and denied in part as follows:

a. Defendants concede plaintiff has exhausted his claims based on grievance HDSP-07-03973; Defendants Koller, Plainer, Ingrewson and Audette be directed to file a responsive pleading to these claims;

b. By grievance HDSP-C-08-1853, plaintiff has exhausted his claim that defendants Prater, Shaver and Koenig intentionally interfered with his prescribed medical treatment by denying his prescribed pillow and mattress from June 2008, through August 11, 2008. Defendants Prater, Shaver, and Koenig should be required to file a responsive pleading to this claim.

c. Defendants' motion to dismiss plaintiff's remaining claims as unexhausted be granted. Because these remaining claims are unexhausted, defendants Speers, Wrigley, Flaherty, Pena, Medina, Zollo, Clark, Cheney, Nason, Waterman, Swingle, Acquaviva and Dezember should also be dismissed from this action.

2. Defendants' March 17, 2010 motion to dismiss defendant Audette be denied.

3. Defendants Koller, Plainer, Ingrewson, Audette, Prater, Shaver, and Koenig shall file a responsive pleading within twenty-one days from any district court order adopting the instant findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 18, 2010

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/holl2810.mtd