IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARVIN GLENN HOLLIS,

        Plaintiff,                      No. 2:08-cv-2810 GEB KJN P

    vs.

HIGH DESERT STATE PRISON, et al.,

        Defendants.              FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding without counsel. This action is proceeding on plaintiff's January 9, 2009 amended complaint (dkt. no. 11), but is limited to plaintiff's claims against defendants Koller, Plainer and Ingwerson, and plaintiff's claim alleging that defendants Prater, Shaver and Koenig denied plaintiff a prescribed pillow and new mattress from June 2008 to August 11, 2008. (Dkt. No. 89.) On July 8, 2011, defendants Prater, Shaver and Koenig filed a motion for summary judgment on the latter claim. As explained more fully below, the court recommends that the motion for summary judgment be granted.

I. <u>Motion for Summary Judgment</u>

        Defendants Prater, Shaver and Koenig move for summary judgment on the grounds that there are no genuine issues of material facts. Plaintiff filed an opposition, and defendants filed a reply. Plaintiff's request that the court take judicial notice of plaintiff's March


4, 2011 motion and exhibits (dkt. no. 107) is granted.  (Dkt. No. 121 at 38.)

### A.  Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. "  Fed. R. Civ. P. 56(a).[1]

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory Committee's Notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

---

[1] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

1  Consequently, if the moving party meets its initial responsibility, the burden then
2  shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.
3  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting
4  to establish the existence of such a factual dispute, the opposing party may not rely upon the
5  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the
6  form of affidavits, and/or admissible discovery material in support of its contention that such a
7  dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party
8  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
9  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
10 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
11 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
12 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
13 1436 (9th Cir. 1987), impliedly overruled in part on other grounds by Hollinger v. Titan Capital
14 Corp., 914 F.2d 1564, 1577-78 (9th Cir. 1990).

15  In the endeavor to establish the existence of a factual dispute, the opposing party
16 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
17 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
18 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary
19 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
20 genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) Advisory
21 Committee's Note on 1963 amendments).

22  In resolving a summary judgment motion, the court examines the pleadings,
23 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
24 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
25 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
26 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By order filed November 16, 2009, the court advised plaintiff of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

B. Undisputed Facts

The following undisputed facts are either not disputed by plaintiff or defendants, or, following the court's review of the evidence submitted, have been deemed undisputed:

1. In 2008,
   a. Plaintiff was incarcerated at High Desert State Prison ("HDSP");
   b. Defendant C. Prater was a Correctional Officer at HDSP;
   c. Defendant D. Shaver was a Correctional Sergeant at HDSP; and
   d. Defendant W. Koenig was a Correctional Lieutenant at HDSP.
2. Plaintiff asked defendant Prater for a new mattress.
3. Defendant Prater inquired about a new mattress for plaintiff, but learned that none were available in the living unit.
4. On June 1, 2008, plaintiff filed an appeal complaining that he was not provided a pillow or mattress exchange as required by his medical chrono. (Dkt. No. 121 at 10.)
5. On June 18, 2008, defendant Prater answered plaintiff's grievance for a new mattress and pillow, at the informal level.

6. Defendant Prater stated in his informal response that he did not have access to pillows or mattresses.

7. On July 10, 2008, defendant Shaver interviewed plaintiff for the first level appeal response.

8. During the interview, plaintiff gave defendant Shaver a chrono from Salinas Valley State Prison ("SVSP"), dated 2006, for a new mattress and a pillow.

9. Defendant Shaver informed plaintiff that before HDSP could provide a new mattress and pillow, medical staff needed to first evaluate plaintiff's medical condition to determine if he still needed the accommodations.

10. Defendant Shaver then contacted the on-duty LVN concerning plaintiff's need for an updated Comprehensive Accommodation Chrono ("medical chrono").

11. The LVN informed defendant Shaver that she would refer plaintiff to a medical doctor as soon as possible to evaluate his condition.

12. The July 18, 2008 first level appeal response by Associate Warden Cochrane informed plaintiff of defendant Shaver's efforts to facilitate the evaluation. (Dkt. No. 120 at 11.)[2]

13. The appeal response also informed plaintiff that once he obtained the updated chrono, he could request a new pillow and mattress when the prison warehouse provided them to the living unit.

14. Defendant Koenig followed-up on the first level appeal response by asking the building officer if plaintiff had been issued a new pillow and mattress.[3] According to the

---

[2] Plaintiff disputes this fact (dkt. no. 121 at 32), but does not explain why, nor cite evidentiary support. Plaintiff provided a copy of the first level appeal response with his amended complaint, so it appears plaintiff received a copy of this appeal response. (Dkt. No. 11 at 53-54.)

[3] Plaintiff disputes this fact, referring the court to plaintiff's declaration in which plaintiff states: "I did not inform Officer Herring that I had a[n] acceptable mattress." (Dkt. No. 121 at 24, 32.) However, defendant Koenig did not identify the building officer as Officer Herring, and

1  building officer, plaintiff stated he had an acceptable mattress, but had not yet been issued a new
2  pillow.
3        15.  Defendant Koenig then instructed staff to order a new pillow.[4]
4        16.  The August 4, 2008 second level appeal response informed plaintiff of
5  defendant Koenig's efforts to accommodate plaintiff.[5]
6        17.  At all times relevant herein, plaintiff had a mattress, which plaintiff
7  characterized as "flat and old."  (Dkt. No. 121 at 10.)
8        18.  Plaintiff was transferred to HDSP on October 23, 2007.  (Dkt. No. 11 at 7.)
9        19.  Plaintiff was housed on Facility D on November 8, 2007.  (Id.)
10       20.  By June, 2008, plaintiff was housed on Facility C.  (Dkt. No. 11 at 18.)
11       21.  On or about August 11, 2008, plaintiff was returned to Facility D, and
12 plaintiff received a medical chrono for an egg crate foam mattress and pillow.  (Id.)
13      C.  <u>Documentary Evidence</u>
14       On May 18, 2006, Dr. Bowman at SVSP wrote physician's orders for plaintiff to
15 receive a chrono for pillows and a new mattress.  (Dkt. No. 107 at 10.)
16       On May 22, 2006, a medical chrono was approved at SVSP for plaintiff to
17 receive:
18 ////

---

plaintiff has not adduced evidence as to what the building officer told defendant Koenig, and failed to provide evidence rebutting defendant Koenig's verified statement that he followed up with the building officer.

[4] Plaintiff disputes this statement of fact, claiming plaintiff never received a new mattress or a new pillow.  However, defendant Koenig told staff to <u>order</u> a pillow, and this fact does not address the issue of giving plaintiff a pillow or a mattress.

[5] Plaintiff also disputes this fact, stating that he was never accommodated.  However, this statement of fact does not claim plaintiff was accommodated; it notes that plaintiff was informed, by the second level response, about defendant Koenig's efforts to address plaintiff's grievance. (Dkt. No. 120 at 13.)  It appears plaintiff received this second level response as he appended it to his amended complaint.  (Dkt. No. 11 at 51-52.)

|   |   |   |
|---|---|---|
| Cotton Bedding: Pillow | P is circled[6] |
| Extra Mattress: New Mattress | P is circled |

(Dkt. No. 11 at 70.) The 2006 medical chrono contains the following instructions:

> Chronos indicating permanent accommodations shall be reviewed annually. This form shall be honored as a permanent chrono at all institutions.

(Id.)

On July 3, 2007, another medical chrono was approved at SVSP for plaintiff to receive:

> New Mattress - once
>
> Pillow - replace - once

(Dkt. No. 107 at 9; 121 at 29.) The 2007 medical chrono contains the same instructions as the 2006 medical chrono. (Id.)

On June 23, 2008, plaintiff was seen by Nurse Practitioner S. Wrigley, who wrote the following progress note, in pertinent part:

> S: The patient is here for follow-up . . . He also wants renewal of chrono for a new mattress, which he actually has in his hand. He states he does not want a chrono for an extra mattress, I assured him that he has a chrono that says new mattress and I am not quite sure what he wants me to do. . . .
>
> O: . . . . The patient presents with numerous pieces of paper stating that he needs special chronos; he got a chrono from Salinas Valley indicating that he needed a new mattress and he would like me to give him the same chrono. The chrono that he has is good here it even states that at the top of the paper, I showed the patient that and stated that if he has a current chrono he can take it to the appropriate folks. . . .

(Dkt. No. 121 at 13.)

////

---

[6] The chrono form lists P/T after each entry. "P" stands for a permanent accommodation and "T" stands for a temporary accommodation. (Dkt. No. 121 at 28.)

On August 25, 2008, a medical chrono was approved for plaintiff at HDSP, providing:

> Egg crate mattress - P circled
>
> Pillow - P circled

(Dkt. No. 11 at 84.) This 2008 chrono contains the same instructions as the prior chronos. (Id.)

Plaintiff provided an October 1, 2008 report by Joseph R. Walker, M.D., regarding plaintiff's low back pain, in which Dr. Walker states plaintiff: "has pillows and a special mattress which seems to help." (Dkt. No. 11 at 80.)

### D.  Verified Amended Complaint

Plaintiff's claims against defendants Prater, Shaver and Koenig are contained in one paragraph:

> 40.) Defendants Prater, Shaver [and] Koenig . . . from the time period of June 2008 through August 11, 2008, while plaintiff was housed on Facility "C," intentionally and purposefully interfered with plaintiff['s] prescribed medical treatment by denying plaintiff his prescribed pillow and mattress after plaintiff notified these defendants he [had] a medical chrono for a pillow and new mattress in which plaintiff had to suffer increased pain.

(Dkt. No. 11 at 18.) Plaintiff avers he has a history of pain and back problems, including lumbar degenerative disc disease with arthritic facets and lumbar spine stenosis associated with congenital stenosis. (Dkt. No. 11 at 22.)

## II.  Due Process Claim

Plaintiff alleges defendants Prater, Shaver and Koenig violated plaintiff's Fourteenth Amendment due process rights. (Dkt. No. 11 at 7.)

Prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Because there is no right to any particular grievance process, due process cannot be violated by ignoring or failing to properly process grievances.

Numerous district courts in this circuit have reached the same conclusion. See, e.g., Wright v. Shannon, 2010 WL 445203 at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment); Williams v. Cate, 2009 WL 3789597 at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims.").

Accordingly, plaintiff's due process claims should be dismissed.

III. Eighth Amendment Claim

Plaintiff also alleges that defendants Prater, Shaver and Koenig 'intentionally and purposefully interfered with plaintiff's prescribed medical treatment by denying plaintiff his prescribed pillow and mattress after plaintiff notified these defendants he had a medical chrono for a pillow and new mattress," causing plaintiff to suffer increased pain. (Dkt. no. 11 at 18.) Plaintiff claims defendants Prater, Shaver and Koenig were deliberately indifferent to plaintiff's serious medical needs.

A. Legal Standard

Generally, deliberate indifference to a serious medical need presents a cognizable claim for a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). According to Farmer v. Brennan, 511 U.S. 825, 847 (1994), "deliberate indifference" to a serious medical need exists "if [the prison official] knows that [the] inmate [ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." The deliberate indifference standard "is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because 'the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992) (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997). Specifically, a determination of "deliberate indifference" involves two elements: (1) the

seriousness of the prisoner's medical needs; and (2) the nature of the defendant's responses to those needs. McGuckin, 974 F.2d at 1059.

First, a "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. (citing Estelle, 429 U.S. at 104). Examples of instances where a prisoner has a "serious" need for medical attention include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. McGuckin, 974 F.2d at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

Second, the nature of a defendant's responses must be such that the defendant purposefully ignores or fails to respond to a prisoner's pain or possible medical need in order for "deliberate indifference" to be established. McGuckin, 974 F.2d at 1060. Deliberate indifference may occur when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988). In order for deliberate indifference to be established, there must first be a purposeful act or failure to act on the part of the defendant and resulting harm. See McGuckin, 974 F.2d at 1060. "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." Id. Second, there must be a resulting harm from the defendant's activities. Id. The needless suffering of pain may be sufficient to demonstrate further harm. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

Where the claim is based on a delay in treatment, "a prisoner can make 'no claim for deliberate medical indifference unless the denial was harmful.'" McGuckin at 1060 (quoting Shapley v. Nevada Board of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)(per curiam)). The harm caused by the delay need not, however, be "substantial." McGuckin at 1060

(citing Wood, 900 F.2d at 1339-40; also citing Hudson, 503 U.S. at 5-10).  A showing of merely inadvertent or even negligent medical care is not enough to establish a constitutional violation.  Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998).

In order to defeat defendants' motion for summary judgment, plaintiff must "produce at least some significant probative evidence tending to [show]," T.W. Elec. Serv., 809 F.2d at 630, that defendants' actions, or failures to act, were "in conscious disregard of an excessive risk to plaintiff's health," Jackson v. McIntosh, 90 F.3d 330, 332 (1996) (citing Farmer, 511 U.S. at 837).

### B. Analysis

The record reflects plaintiff was provided conflicting instructions.  Plaintiff declares that defendant Prater "was the regular building officer where plaintiff was housed." (Dkt. No. 121 at 3.)  Associate Warden Cochrane reiterated defendant Shaver's advice that plaintiff needed to talk with his "building Floor Officers" to obtain a mattress exchange (dkt. no. 121 at 17), yet Chief Deputy Warden McDonald advised plaintiff to contact his "unit staff on second watch" to obtain a mattress exchange (dkt. no. 121 at 23).  The declarations filed by defendants Prater and Shaver are devoid of any reference to a building officer.  (Dkt. No. 120 at 4-5, 15-16.)  Defendant Koenig's declaration refers to "the building officer," but fails to identify the officer by name.  (Dkt. No. 120 at 18.)  However, defendant Prater did not dispense this conflicting advice, and plaintiff provided no prison regulation, policy, or other evidence demonstrating defendant Prater was responsible to provide the pillow or exchange plaintiff's mattress, particularly in the face of undisputed evidence that defendant Prater did not have access to pillows or mattresses.  In any event, no party produced evidence demonstrating the appropriate prison employee from whom plaintiff was to obtain a mattress exchange, whether or not plaintiff

////

////

////

had a medical chrono.[7]

In connection with plaintiff's medical chrono, plaintiff was also given conflicting information. When presented with plaintiff's 2006 medical chrono from SVSP during an appeal interview, defendant Shaver informed plaintiff on July 10, 2008, that plaintiff needed to be seen by the Medical Department to determine if plaintiff's medical condition still required the issuance of a new mattress. (Dkt. No. 121 at 18.) However, plaintiff previously sought a renewal, but was told the SVSP chrono was good at HDSP. (Dkt. No. 121 at 13.) After defendant Prater denied plaintiff's informal appeal on June 18, 2008, plaintiff presented at clinic on June 23, 2008, and requested renewal of his medical chrono for a new mattress. (Dkt. No. 121 at 13.) Nurse Practitioner Wrigley wrote the following note in plaintiff's medical record:

> [Plaintiff] got a chrono from Salinas Valley indicating that he needed a new mattress and he would like me to give him the same chrono. The chrono that he has is good here[.] [I]t even states that at the top of the paper[;] I showed the patient that and stated that if he has a current chrono he can take it to the appropriate folks.

(Dkt. No. 121 at 13.)

While the top of plaintiff's chronos each state that "[t]his form shall be honored as a permanent chrono at all institutions," that sentence is preceded by "Chronos indicating permanent accommodations shall be reviewed annually." Arguably, plaintiff's 2006 medical chrono was not current if presented in the middle of 2008 unless it had been reviewed. Plaintiff has provided no evidence demonstrating that the 2006 medical chrono was reviewed; indeed, it appears from the 2007 SVSP medical chrono that plaintiff's accommodations were revised.

Therefore, defendant Prater's decision to deny the informal appeal was appropriate because plaintiff did not have a current medical chrono on June 18, 2008. In addition, defendant Shaver properly informed plaintiff that he needed to be seen by the Medical

---

[7] In his declaration, plaintiff claims defendants "were the appropriate folks" to provide him a pillow and new mattress. (Dkt. No. 121 at 25.) However, plaintiff adduced no evidence to support this conclusory statement.

Department to have the medical chrono updated. But, given Wrigley's response, it is not surprising plaintiff did not immediately return to medical to obtain an updated chrono. Plaintiff declares he informed defendant Shaver that Wrigley told plaintiff the chrono was valid. (Dkt. No. 121 at 25.)

It appears that plaintiff relies on Wrigley's note in plaintiff's medical record that states "[t]he chrono that [plaintiff] has is good here." But plaintiff did not provide a declaration from Nurse Practitioner Wrigley confirming that the 2006 chrono was current, or that HDSP was required to honor, in 2008, a medical chrono issued in 2006. The note in the medical record is not confirmation that the 2006 medical chrono is current because plaintiff presented with numerous pieces of paper and the medical record does not specifically identify which chrono from SVSP plaintiff presented, or to which SVSP medical chrono Wrigley referred. (Dkt. No. 121 at 13.) Moreover, Wrigley qualified the statement by adding "**if** [plaintiff] has a current chrono he can take it to the appropriate folks." (Id.)

Finally, no party addressed the implications of the subsequent July 3, 2007 medical chrono, also issued by SVSP, which appears to change plaintiff's accommodation for a new mattress and replacement pillow from "permanent" to "once." (Dkt. No. 121 at 29.) The record does not reflect that Wrigley reviewed plaintiff's medical records to determine whether the medical chrono presented was current; indeed, it doesn't appear Wrigley read plaintiff's 2006 SVSP medical chrono, because Wrigley told plaintiff that he could take it to the appropriate folks "**if**" plaintiff had a current chrono. (Dkt. No. 121 at 13.) If Wrigley had read the 2006 SVSP chrono, Wrigley may have noted it wasn't current, and provided plaintiff with the current medical chrono to which he was apparently entitled, as evidenced by the renewed August 11, 2008 medical chrono.

However, Wrigley is not a named defendant on this claim. With regard to defendants Prater, Shaver and Koenig, plaintiff has failed to adduce evidence demonstrating that any of these defendants were deliberately indifferent to plaintiff's need for a pillow or new

mattress. Each defendant provided a declaration stating that none of them intentionally deprived plaintiff of a new mattress or pillow. (Dkt. No. 120 at 4, 15, 18.) Plaintiff failed to rebut their declarations. Plaintiff did not rebut the undisputed evidence that defendant Prater inquired but learned there were no new mattresses available in the living unit, and informed plaintiff that defendant Prater did not have access to mattresses or pillows; that defendant Shaver contacted the LVN to make arrangements for plaintiff to see a medical doctor as soon as possible to evaluate plaintiff's condition; or that defendant Koenig followed-up on plaintiff's appeal by contacting the building officer and instructing staff to order a new pillow. Plaintiff did not provide a declaration from the building officer rebutting defendant Koenig's declaration. Plaintiff declares that he did not inform Officer Herring that plaintiff had an acceptable mattress, but plaintiff provided no evidence that Officer Herring was the sole building officer,[8] or that Officer Herring was the building officer to whom defendant Koenig spoke about the mattress and pillow.[9]

In any event, the actions by the named defendants do not demonstrate deliberate indifference. Plaintiff has adduced no facts or evidence demonstrating that defendants Prater, Shaver or Koenig ignored or failed to respond to plaintiff's request for a pillow and new mattress, or that defendants intentionally interfered with or delayed plaintiff's receipt of a pillow or new mattress. Plaintiff has failed to raise a triable issue as to whether defendants Prater, Shaver and Koenig acted with deliberate indifference to plaintiff's serious medical needs, particularly in the absence of evidence that the 2006 medical chrono was current. Even viewing the facts in the light most favorable to plaintiff, there is no triable issue because defendants

---

[8] Plaintiff claims defendant Prater was the regular building officer (dkt. no. 121 at 3), and the first level appeal response suggests there were more than one building officer. (Dkt. No. 121 at 17.)

[9] Conceivably, Associate Warden Cochrane or Chief Deputy Warden McDonald could have accelerated plaintiff's receipt of a pillow and new mattress had they ordered, in their rulings on the administrative appeals, that the requisite chronos be issued. However, neither Cochrane or McDonald are named as defendants as to this claim.

1  Prater, Shaver and Koenig were not subjectively deliberately indifferent.

2          In his verified opposition, plaintiff claims he notified defendants Koenig and
3  Shaver on July 10, 2008, that plaintiff had a medical chrono for a new mattress and pillow, by
4  completing an "Inmate Request for Interview" form. (Dkt. No. 121 at 4, 15.) Plaintiff argues
5  defendants Shaver and Koenig did not respond to this request. To the extent plaintiff argues the
6  delay between July 10, 2008, and August 11, 2008, constituted deliberate indifference to
7  plaintiff's serious medical needs, plaintiff's claim fails. Plaintiff failed to provide evidence that
8  completing an inmate request for interview form is the proper procedure to obtain a pillow and
9  new mattress. Moreover, this 31 day delay in receiving these items, without more, is insufficient
10 to give rise to a constitutional violation. At most, the 31 day delay in receiving the pillow and
11 egg crate mattress, without more, constitutes negligence. Negligence is insufficient to establish a
12 constitutional violation. See Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (delay in
13 granting elevator pass did "not qualify as deliberate indifference."); see, e.g., Frost, 152 F.3d at
14 1130 (finding no merit in claims stemming from alleged delays in administering pain medication,
15 treating broken nose and providing replacement crutch, because claims did not amount to more
16 than negligence); O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly failing to
17 satisfy requests for aspirins and antacids to alleviate headaches, nausea and pains is not a
18 constitutional violation; isolated occurrences of neglect may constitute grounds for medical
19 malpractice but do not rise to level of unnecessary and wanton infliction of pain); Anthony v.
20 Dowdle, 853 F.2d 741, 743 (9th Cir. 1988) (grant of summary judgment to defendants as no
21 more than negligence stated where prison warden and work supervisor failed to provide prompt
22 and sufficient medical care).

23         The court is sympathetic to the difficulties plaintiff encountered in trying to obtain
24 a new mattress and a pillow while housed on Facility C, as well as the frustration of receiving
25 conflicting instructions. However, for all of the above reasons, defendants Prater, Shaver and
26 Koenig are entitled to summary judgment.

IV.  Qualified Immunity

In light of the above recommendations, the court need not address defendants' qualified immunity arguments.

V.  Conclusion

Accordingly, IT IS HEREBY ORDERED that plaintiff's July 20, 2011 request for judicial notice (dkt. no. 121 at 36) is granted; and

IT IS RECOMMENDED that the July 8, 2011 motion for summary judgment filed by defendants Prater, Shaver and Koenig (dkt no. 119) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 14, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

holl2810.msj